# EXHIBIT

# 1

# IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

**BRIAN S. NORTHCRAFT**

*Plaintiff (s)*

*V.*

Civil Action No. **20-C-56**
**Judge: TABIT**

**W. VA. DEPARTMENT OF CORRECTION**
**1409 GREENBRIER STREET**
**CHARLESTON, W. VA. 25311**

*Defendant (s)*

## SUMMONS

## To the above named Defendant:

### IN THE NAME OF THE STATE OF WEST VIRGINIA:

You are hereby summoned and required to serve upon **BRIAN S. NORTHCRAFT #3613795** Plaintiff whose address is **W. VA. NORTHERN CORRECTIONAL, 112 NRC DRIVE, MOUNDSVILLE, W. VA. 26041** an Answer, including any related counterclaim or defense you may have, to the Complaint filed against you in the above styled civil action, a true copy of which is herewith delivered to you. You are required to serve your Answer within **20** days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint and you will be thereafter barred from asserting in another action any claim you may have which must be asserted by counterclaim in the above styled civil action.

Date: **January 22, 2020**

**Cathy S. Gatson, Clerk**
*Circuit Clerk*

K S Moss
By: *Deputy Clerk*

IN THE CIRCUIT COURT OF KANAWHA COUNTY, WEST VIRGINIA

BRIAN NORTHCRAFT,

    Plaintiff,

v.                       CIVIL ACTION NO.:

WEST VIRGINIA DIVISION OF
CORRECTIONS AND REHABILITATION;

TIM BOWEN, Superintendent,
North Central Regional Jail &
Correctional Center;

CHAD BEAVER, Transport Officer,
North Central Regional Jail &
Correctional Center;

TIMOTHY HALE, Transport Officer,
North Central Regional Jail &
Correctional Center;

JOHN DOE, Correctional Officer,
North Central Regional Jail &
Correctional Center;

## COMPLAINT

    NOW COMES, your Plaintiff, Brian Northcraft, (Plaintiff) Pro
Se and hereby submits his Complaint against the above named
Defendants. In support of this Complaint, your Plaintiff states
as follows:

1

## PARTIES

1. Plaintiff, Brian Northcraft (Plaintiff), is a citizen of West Virginia and is currently incarcerated at the Northern Regional Jail & Correctional Center (NRJCC). Plaintiff, at all times relevant herein, was an inmate incarcerated at the North Central Regional Jail & Correctional Center (NCRJCC) where the subject of this Complaint did occur.

2. Defendant Tim Bowen, at all times relevant herein, was a supervisory official employed by the West Virginia Division of Corrections & Rehabilitation (WVDCR) at NCRJCC. Defendant Bowen, at all times relevant herein, was the Superintendent of NCRJCC. This Defendant is being sued in his individual capacity.

3. Defendant Chad Beaver, at all times relevant herein, was a Transport Officer employed by the WVDCR at NCRJCC. This Defendant is being sued in his individual capacity.

4. Defendant Timothy Hale, at all times relevant herein, was a Transport Officer employed by the WVDCR at NCRJCC. This Defendant is being sued in his individual capacity.

5. Defendant John Doe, at all times relevant herein, was a Correctional Officer employed by the WVDCR at NCRJCC. This Defendant is being sued in his individual capacity.

2

## NATURE OF COMPLAINT

6. From 2017 to 2018, Plaintiff was incarcerated at the NCRJCC as a pretrial detainee for an alleged sexual offense. While awaiting trial for that offense, On two (2) seperate occasions Defendant Hale subjected Plaintiff to assault and battery, as well as, the malicious and sadistic use of excessive force. Defendant Hale's use of force was unwarranted, unjustified and was applied soley for the purpose of causing Plaintiff harm. Defendant Hale, on at least two (2) seperate occasions did subject Plaintiff to the intentional infliction of emotional and/or psychological distress. The acts committed by Defendant Hale were a wanton and willful infliction of pain upon the Plaintiff which is proscribed by both, the West Virginia Constitution and the United States Constitution. Defendant Hale, on at least two (2) seperate occasions did create a substantial risk of harm to Plaintiff by labelling Plaintiff a sex offender to the NCRJCC inmate population in violation of both the West Virginia Constitution and the United States Constitution. Defendant Beaver on at least one occasion did subject Plaintiff to assault and battery, as well as the sadistic use of excessive force, or he failed to intervene in Defendant Hale's attack on Plaintiff either of which violate both the West Virginia Constitution and the United

3

States Constitution. Defendant Tim Bowen failed to properly train, supervise and/or discipline Defendants Hale, Beaver and John Doe in the proper use of force, as well as, other WVDCR policies and/or NCRJCC policies and operational procedures, all of which directly resulted in Plaintiff being damaged. Defendant John Doe, on one occasion, did actively participate in the assault and battery of Plaintiff and also subjected Plaintiff to the malicious and sadistic use of excessive force. That force was unwarranted and unjustified and was applied soley for the purpose of causing harm to the Plaintiff. The acts committed by Defendant John Doe were a wanton and willful infliction of pain upon the Plaintiff which is proscribed by both the West Virginia and United States Contitution.

7. The reckless, wanton, willful and intentional acts and omissions of the Defendants directly resulted in Plaintiff being injured physically, emotionally and/or psychologically. Plaintiff has exhausted all available administrative remedies in this matter. Plaintiff is seeking damages from the Defendants, jointly and severally, up to an amount which is commensurate with the amount of insurance coverage applicable to Plaintiff's claims made herein. Plaintiff is not making a claim pursuant to 42 U.S.C. § 1983 against Defendant West Virginia Division of Corrections & Rehabilitation. Plaintiff

4

further asserts that he is not seeking punitive damages from
Defendant West Virginia Division of Corrections & Rehabilit-
ation.

8. All events and occurrences alleged herein occurred in the
State of West Virginia.

### FACTUAL BACKGROUND

9. Plaintiff incorporates by reference and realleges each and
every allegation contained in paragraphs 1 through 8 as if
set forth fully herein.

10. Although the Statute of limitations has runout regarding an
an incident which took place between Defendant Hale and the
Plaintiff on December 4, 2017, Plaintiff hereby asserts that
Plaintiff is not making any claims in which he seeks relief
regarding this incident.

11. On or about December 4, 2017, Defendant Hale entered the
Plaintiff's cell in the booking area of the NCRJCC. Defendant
Hale instructed Plaintiff to submit to a strip search for the
purpose of transporting Plaintiff to the Tyler County Court-
house. Plaintiff complied and after getting dressed, Defendant
Hale shoved Plaintiff into the wall of the cell and then asked
Plaintiff "Do you think you're tough?" Defendant Hale then

5

escorted Plaintiff to the waiting transport van. Upon
entering the transport van, Defendant Hale advised the other
inmates that the Plaintiff was incarcerated for sexual assault
and kidnapping. The other inmates proceeded to spit on the
Plaintiff and call him derogatory names as a result of
Defendant Hale's actions. Defendant Hale sat the Plaintiff
between two (2) female inmates in the van and told them to
"kill" the Plaintiff if he tries anything. These acts were
witnessed by Transport Officer Tallman who later told the
Plaintiff that Defendant HAle's behavior was unprofessional
and "way over the top."

12. On or about January 11, 2018, Defendant Hale arrived at the
Plaintiff's cell at NCRJCC. At that time, Plaintiff was housed
in protective custody (PC) in the facility's segregation unit
A7. Plaintiff was being transported to the Tyler County
Courthouse for a status hearing in his criminal case.

13. After arriving at Plaintiff's cell, Defendant Hale removed
Plaintiff from his cell and instructed him to get into the
shower stall next to his cell. Although the request was
uncommon, Plainitiff complied and entered the stall along
with Defendant Hale who entered behaind Plaintiff and pulled
the door shut. Once the door was shut, Defendant Hale
immediatley began spraying Plaintiff in the eyes and face

with Oleoresin Capsicum (OC). Defendant Hale continued to assault Plaintiff with the OC for several seconds, then began screaming at Plaintiff to get on the ground at which time Plaintiff complied and lay facedown on the shower floor. Defendant Hale then forcefully handcuffed Plaintiff at which time Plaintiff could hear Defendant Beaver open the stall door. While Defendant Beaver held the stall door open, Defendant Hale grabbed only the handcuffss which were securing Plaintiff's hands behind his back and began pulling the Plaintiff up off the floor. This caused Plaintiff excrutiating pain in his wrists, arms and shoulders. As Plaintiff slowly got to his feet, Defendant Hale proceeded to knee Plaintiff in his left kidney multiple times. Defendant Beaver made no attempt to intervene or stop the assault by Defendant Hale. Defendant Hale then began making the allegation that Plaintiff had spit on him. Spitting on an inmate is a very serious rule violation which constitutes assault on an officer. Plaintiff hereby avers that he never spit on Defendant Hale and that Defendant Hale only made this claim in order to justify his assault on Plaintiff as a legitimate use of force. However, Plaintiff was never charged with assaulting an officer or any other rule violation in regards to Defendant Hale's allegation of Plaintiff spitting on him. Plaintiff was then escorted to an outside recreation yard and plced on the

7

ground. Defendants then placed a spit mask over Plaintiff's
face, which was still covered in OC. Plaintiff requested
medical attention and to be decontaminated from the OC.
Defendant Hale and Beaver refused to contact medical and
refused to decontaminate Plaintiff of the OC.

14. Plaintiff was then escorted to the booking area by the
Defendants. Plaintiff was placed in a belly chain and shackels.
However, Plaintiff's hadns remained secured behind his back.
Plaintiff found this uncommon as well because when an inmate
housed at a Regional Jail is transported to Court or an
outside appointment, they are cuffed in the front and their
hands are secured to their bellychain through a tamper proof
box that is attached to their cuffs.

   Once outside and beside the transport van, Defendants
Hale, Beaver and John Doe, using plastic zipties, proceeded
to ziptie Plaintiff's cuffed hands, which were behind his back,
to his shackles, thereby hogtying Plaintiff. These Defendants
then picked up the Plaintiff, who was still soaked in OC spray
and wearing a spit mask, and threw the Plaintiff into the van
onto an empty bench seat, facedown. As a result of being
thrown into the transport van, while hogtied, Plaintiff's
head was struck off of the wall of the van.

15. Because Plaintiff was facedown, he was having trouble

breathing. Plaintiff could not breath, blinded and burning from th OC spray. Plaintiff began crying and pleading for help. Eventually, due to Defendant Beaver's deliberately aggressive driving, Plaintiff was thrown from the seat and his face was struck off of a steel leg of the bench seat resulting in the chipping of his teeth.

16. While hogtie, bleeding, blinded and burning and trapped between the seat and the security cage seperating the officers from Plaintiff and two (2) other inmates, Plaintiff again beg the Defendants to help him. After telling the two (2) other inmates not to worry about Plaintiff because he was a sex offender, Defendants stopped the van at Conway Lake Rd. on Rt. 18 in Tyler County. Defendant Hale then got into the back of the van and again assaulted Plaintiff with his OC spray. Plaintiff was then lifted back onto the seat at which time his face was struck off of the wall of the van. As the van continued, Defendant Hale stated that he would assault Plaintiff with the OC again if Plaintiff moved on the seat at all. Plaintiff was still hogtied, facedown, blinded, burning and wearing the spit mask.

17. Once arriving at the Tyler County Courthouse, inmate Steve Chaplin and the second inmate (Name unknown) taken into the courthouse first. Plaintiff requested to speak to his

attorney at which time Defendant Hale stated "There isn't a
lwyer that can help you with the charges you have.", After
being hogtied for approximately two (2) hours, Plaintiff was
escorted into the Courtroom by Tyler County Sheriff Brian
Wiegle, who stated to Plaintiff that he felt the Defendants
were totally out of line for what they had done.

18. Plaintiff was present throughout his entire hearing, soaked
in OC spray and with his face bleeding. The condition of the
Plaintiff was witnessed and noted by the Defendants then
attorney, Kevin Neiswonger.

19. After the hearing, Plaintiff was returned to the transport
van where once again his hands were cuffed behind his back.
However, this time, Defendants ziptied Plaintiff's bellychain
to his shackles which allowed Plaintiff to sit in the seat
on his buttocks but in a bent over position. Throughout the
journey back to NCRJCC Defendant Hale would threaten to again
assault Plaintiff with OC spray due to the van making  the
Plaintiff move around. Periodically, Defendant Beaver would
stop the van in order for Defendant Hale to get into the
back of the van and tighten Plaintiff's zipties, thereby
forcing Plaintiff into a more secured, bent-over position.
Defendant Hale would also brandish his OC and act as if he
were going to assault the Plaintiff again. Each time, the

10

Plaintiff would cower away in fear and Defendants would laugh.

20 After returning to NCRJCC, Defendant Hale conducted the Plaintiff's strip search at which time while Plaintiff was nude, Defendant Hale repeatedly forced Plaintiff to bend over and spread his buttocks. Defendant forced Plaintiff to do this approximately four (4) times. At the end of the strip search, Defendant Hale asked Plaintiff, "How does it feel to be sexually exploited?".

21. Plaintiff was then returned to his cell. After being assaulted with OC spray, being forced to be contaminated in the OC spray for approximately eight (8) hours, being hogtied for approximately two (2) hours, wearing an OC contaminated spit mask for approximately two (2) hours, Plaintiff did exhaust all available administrative remedies. (see EXHIBIT ONE).

## COUNT I
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS/OUTRAGEOUS CONDUCT

22. Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 21 as if set forth fully herein.

11

23. Defendants' conduct was carried out without just cause and was outrageous and intentional, proximately causing Plaintiff to suffer severe bodily injury, severe emotional distress, humiliation, embarassment, mental distress and loss of personal dignity.

24. Defendants knew or should have known that such conduct was reasonably certain to cause severe emotional distress, as well as, physical harm. Despite said knowledge, Defendants conducted themselves in an unlawful manner when they subjected Plaintiff to assault and battery, as well as, the malicious and sadistic use of excessive force. Defendants' conduct was an unnecessary infliction of pain upon the Plaintiff which amounted to cruel and unusual punishment.

25. As a result of the conduct stated above, Plaintiff has suffered severe mental anguish, embarassment, humiliation and physical injury and has otherwise been greatly damaged through Defendants' violation of Plaintiff's rights and is therefore entitled to compensatory damages against the Defendants, as well as, punitive damages against the Defenda-nts, as well as, attorney's fees and costs.

## COUNT II
## VIOLATION OF 42 U.S.C § 1983

26. Plaintiff incorporates by reference and realleges each and

12

every allegation contained in paragraphs 1 through 25 as if
set forth fully herein.

27. Defendants harassed, assaulted and battered Plaintiff and
they physically injured him when they used OC spray, pulled
him off the floor by his handcuffs, placed a spit mask on him,
hogtied him, threw him in a transport van, caused him to chip
his teeth, kneed him in his kidneys and forced him into a
bent over poition for an extended period of time, without just
cause, while he posed no threat to the Defendants, himself,
others or State property. This conduct was unwarranted,
unnecessary and unjustified. Defendants' actions were committ-
ed with the intent to inflict unnecessary harm, humiliation,
embarassment, and emotional distress upon Plaintiff and was
carried out under the color of the law of the State of West
Virginia. The conduct described herein deprived Plaintiff of
his rights and privileges under the Constitution of the United
States and West Virginia. The conduct was carried out with
malice and is evident from the spraying of Plaintiff while he
posed no threat to the Defendants, himself, others or State
property and is further evident by Defendants doing so while
Plaintiff was handcuffed behind his back, shackled and hogtied.
The Plaintiff not being decontaminated for approximately
eight (8) hours, wearing a spit mask and being hogtied for

approximately two (2) hours demonstrates malice towards the Plaintiff. At no time did the Defendants ever attempt to temper their illegal use of force. Defendant Hale repeatedly referenced Plaintiff's criminal charges and even disclosed those charges to the inmate population. When Plaintiff cried and pleaded for help while trapped between the seat and the security cage in the transport van, Defendant Beaver pulled over in order to allow Defendant Hale to again assault the Plaintiff who was incapacitated due to being hogtied, blinded and burning from the OC, bleeding and terrified. Defendant John Doe's participation contributed to the violation of Plaintiff's rights. Defendant Tim Bowen's failure to properly train, supervise and discipline Defendants Hale, Beaver and John Doe also contributed to the violation of Plaintiff's rights.

28. The excessive force used against the Plaintiff, who was a pretrial detainee at the time, was in violation of Plaintiff's rights under the Fourteenth Amendment of the United States Constitution, Article III § 10 of the West Virginia Constitution, the Eighth Amendment of the United States Constitution, as well as, Article III § 5 of the West Virginia Constitution. Defendants' use of excessive force amounts to a violation of Due Process and further amounts to Cruel and Unusual Punishment. This Due Process violation and Cruel and Unusual

14

Punishment was carried out without any just cause and was completely unwarranted.

29. The conduct of Defendants was so egregious and outrageous, so as to constitute an abuse of power in violation of the Plaintiff's right to be from such physical attacks under the Fourteenth and Eighth Amendments of the United States Constitution, as well as, Article III § 5 and 10 of the West Virginia Constitution. Defendants' acts, as set forth herein, were done while acting under the color of State law and rises to the level of Cruel and Unusual Punishment and Due Process violations.

30. As a result of the aforementioned violation of Plaintiff's Constitutional rights, Plaintiff has suffered physical injury, as well as, mental anguish, embarassment, humiliation and has otherwise been greatly damaged through Defendants' violation of his rights and is therefore entitled to comp-ensatory damages as well as ounitive damages against the Defendants and attorney fees and costs.

### COUNT III
### VICARIOUS LIABILITY

31. Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 25 as if set forth fully herein.

15

32. Defendant WVDCR is vicariously liable for the conduct of its employees under the doctrine of respondeat superior, as the individual Defendants were acting within the scope of their employment and at the time the inappropriate acts described herein occurred. Moreover, Defendant WVDCR is responsible for ensuring compliance with policy directives set forth in this complaint as well as other directives to ensure the safety and wellbeing of inmates.

33. As such, Plaintiff is entitled to recover damages from the WVDCR for said conduct.

IV
RECKLESS/NEGLIGENT CONDUCT
VIOLATION OF POLICY AND PROCEDURE

34. Plaintiff incorporates by reference and realleges each and every allegation contained in paragraphs 1 through 33 as if set forth full herein.

35. Defendant WVDCR has policies and procedures in place that preclude the use of ecessive force by Correctional officers and transport officers.

36. The purpose of those policies are to prevent officers from using malicious and sadistic force to harm inmates.

16

37. Defendant WVDCR's reckless/negligent conduct was a violation
of policy and procedure that resulted in Plaintiff being
subjected to excessive force as described herein. The
violation of this well-known policy was a proximate cause of
Plaintiff's injuries.

## COUNT V
## ASSAULT AND BATTERY

38. Plaintiff incorporates by reference and realleges each and
every allegation contained in paragraphs 1 through 37 as if
set forth fully herein.

39. Defendants created an apprehension within Plaintiff of
immediate physical harm by making threats of physical harm.
Plaintiff was battered by Defendants when he was sprayed
with OC, hancuffed, placed in a spit mask, hogtied, thrown
facedown into a transport van, deliberately thrown off of
the seat in the transport van chipping his teeth, sprayed
with OC for a second time without being decontaminated for
approximately eight (8) hours, forced into a bent over
position using plastic zipties, then sexually exploited and
by being forced to wear an OC contaminated spit mask for
approximately two (2) hours, all without just cause.

40. Defendants are liable for this inappropriate conduct and the

17

use of excessive force against Plaintiff. The use of force techniques used by Defendants are a violation of WVDCR policy and procedure. Defendants failed to make any attempt to temper and further should not have been applying any force to Plaintiff in the first place because Plaintiff posed no threat to the Defendants, himself, others or state property.

41. As a result of the aforementioned assault and battery, the Plaintiff has suffered mental anguish, embarassment, humiliation and physical injury, including but not limited to, permanent skin damage as well as a shoulder injury and dental injuries which cause Plaintiff constant pain, and has otherwise been greatly damaged through Defendants' violation of his rights and is therefore entitled to compensatory damages as well as punitive damages from Defendants as well as attorney's fees and costs.

**WHEREFORE,** based on the reasons set forth in this Complaint, and for such other and further reasons as are apparent to this Honorable Court, PLaintiff respectfully requests that judgment be entered in favor of the Plaintiff and against the Defendants and requests that the Court award damages including, but not limited to, physical injury, medical expenses, damages for emotional and mental distress and punitive damages, Court costs, pre-judgment interest,

18

post-judgment interest, attorney's fees and expenses.

FILED

2020 JAN 16  AM 10: 07

PLAINTIFF DEMANDS A TRIAL BY JURY.

CATHY S. GATSON, CLERK
KANAWHA COUNTY CIRCUIT COURT

Sworn to, taken and affirmed, before me this 7th day

of _January_____, ~~2019~~ 2020 RG in Marshall County, West Virginia.

_Robert W. Smith_
NOTARY PUBLIC

_Brian S. Nathwright_
PLAINTIFF

My commission expires, _04_ , _10_ , _2024_

OFFICIAL SEAL
NOTARY PUBLIC
STATE OF WEST VIRGINIA
ROBERT W. SMITH
112 Northern Regional Correctional Drive
Moundsville, West Virginia 26041
My Commission Expires Apr. 10, 2024

19

EXHIBIT ONE

Request

To: Superintendent Joseph Wood
From: Brian Northcraft 3613795
Date: October 1, 2019

Please process these grievances and return them to me so that I will have a hard copy of them. Please open a grievance log to properly receive all of them.

Brian Northcraft 3613795
Brian Northcraft
WV Northern Correctional
112 NRC Drive
Moundsville, WV 26041

Grievance # 2019-10-02-NCRJ

RECEIVED
OCT 2 2 2019
BY: ...............

Grievance

TO: Superintendent NCRJ
FROM: Brian Northcraft  3613795
Date: October 1, 2019

On 1/11/18 I was housed in A7 in the segregation unit of NCRJ. On this day I was scheduled to have court in Tyler County, WV. Transport Officer Hale came into the pod to obtain me from my cell, located directly beside the shower. I was considered a flight risk inmate and was supposed to be dressed in a Red outfit. I was only given a red shirt because there were not any Red pants that fit me at that time. I was wearing an orange outfit, waiting on my red shirt to become dry for court. Transport officer Hale asked me where my red outfit was and I replied, "It's right here, let me put it on." He then asked me to step out of my cell and into the shower to change my shirt. I did as he asked and he followed me into the shower. Upon entering he closed the door. He then started to spray me with mace for absolutely no reason. I dropped to the ground as instructed and let him put me into handcuffs. He then proceeded to spray me again directly on the forehead and into my eyes at a point blank range, while I was laying on the floor on my belly. He the accused me of spitting on him. He sprayed

me again, less than one inch from my eyes. He then
called me a "sex offender, piece of shit" and made a
comment that I was getting what I deserved. He then
proceeded to pick me up by the handcuffs and kneed me
in the kidneys twice on my left side. I followed all
of his commands as this assault took place. He then took
me out to the rec yard and refused to allow me to wash
my eyes out with water. I was placed in a spit mask
while I was handcuffed behind the back. He then refused
to call the nurse, as I had asked for medical assistance.
At this time, he proceeded to put on the act that I was
the one at fault in front of multiple CO's. I was taken
to intake and placed in belly chains and handcuffed behind
my back. He placed me into ankle shackles and still
refused to rinse my eyes out with water. He then walked
me out to the transport van where he and multiple CO's
decided to zip tie my feet to my hands, so that I
was hog tied. As he threw me into the van, I bashed
my head against the sidewall interior of the van. I was
then laying on my belly in a position that I couldn't
breathe, see, or move. He then decided to continue transport
with me positioned like this. During the transport trip,
he made it known to both inmates in the van that I
was a sex offender and that if I moved he was
going to spray me with mace. During transport I was
thrown off the seat into the floor, chipping my
teeth off of the legs of the van seat. I was then

pinned between the seat and the front plexi glass of the van. I asked to be picked up so that I could catch my breath. They proceeded to Conway Lake Road on Rt 18. I know this because I saw the old roller rink building that is at ~~the redecoredtors~~ this wide spot where they pulled over and opened the door. He then proceeded to spray me at close range and moved me back into the seat. He then told me that if I moved again, he would spay the mace once again. I was slammed against the sidewall of the van, hitting the wall with my face. The transport began again and everytime I tried to reposition my head he would hold the mace can from the front towards me, threatening to spray me. Upon arrival they escorted inmate Steve Chaplin and inmate unknown into the court house. I asked to see my lawyer before court and he laughed and said, "There isn't any lawyer that can help you with the charges you have." After being hog tied for over 2 and half hours, I was escorted into the court house by the sheriff. He told me to hang in there and that he thought the CO was totally out of line with his actions. I went through my hearing with mace in my eyes and my face was bleeding. Witnessed by my lawyer Kevin Neiswonger. After the trial, I was escorted back to the transport van where they then proceeded to zip tie me while I was

sitting upright with my hands behind my back. They tied my belly chains to my ankle shackles, this made it very difficult to balance myself in the seat because I was hunched forward. The transport back to the jail began and CO Hale started to again threaten to spray me for the van moving me around while he drove. He then called me all kinds of derogatory comments. He kept stopping the van at multiple locations, and hopping in the back seat and acted like he was going to spray me again. He also would tighten up the zip ties attached to me at each stop. Upon arrival at the jail, he tried to apologize to the other two inmates for his behavior. They told me to make sure that I sue him for his conduct and to let them know if they needed to provide statements. As we entered the jail he kept me shackled and placed me in a chair facing the corner until he stripped me out. When it was my turn to strip out, he undid my shackles inside the bathroom. He began the normal strip out procedure, and then suddenly asked me to bend at the waist and spread my cheeks. He made me do this four different times, commenting "How does it feel to be sexually exploited?" He made me squat and cough twice, and then proceeded to ask me to face him. He then tried to tell me that he was a great guy and that my charges proved to him that I was complete trash. I took all of his punishment without any response except in the end I said, "You are the only CO that has ever harassed me and that he was not allowed to call

me out of my cell and into a shower to change a shirt so that he could spray me without there being any cameras, hog tie me for no reason, and spray me during transport." He proceeded to laugh out and tell me that the state owns my body and whom would they believe a sex offender inmate or him. He then stated that he was "like God" around there and what he says, goes. He then proceeded to tell me that he has been a CO for over 13 years and that he has no compassion for any sex offender. He then started poking me in the chest, telling me if I tried to file a complaint on him that he would ensure that my life was a daily living hell. His assault made me fear for the safety of my life while being housed at NCRJ. I was then placed in a visitation room before being taken back to my cell. I demanded an investigation and was told that one would be done and that they don't always agree with the CO. Upon entering my cell, my cellmate Mikah Morris instantly said that they sprayed me for no reason and that he could hear everything that was said in the shower. There were multiple inmates in A7 that had heard the events in the shower. I then proceeded to ask to shower since I had been drenched and soaking in mace for over 8 hours. At this point I had blotches of redness and rashes all over my body. I was

denied access to the shower; so I tried to rub milk all over my body to try and take the burning sensation away. The rashes and burns lasted for weeks. I also had bruises on my chest, left side, and face; all witnessed by my cellmate. I currently have white spots on my face, neck, arms, and back that have never went away.

Relief: CO officer Hale to be fired for his conduct. CO's that hog tied me to be reprimanded and retrained.

October 1, 2019    Brian Nothcraft-3613795



**STATE OF WEST VIRGINIA**
*DEPARTMENT OF MILITARY AFFAIRS & PUBLIC SAFETY*
**DIVISION OF CORRECTIONS AND REHABILITATION**



**BETSY C. JIVIDEN**
**COMMISSIONER**

**JOSEPH WOOD**
**SUPERINTENDENT**

**JEFF S. SANDY, CAMS, CFE**
**CABINET SECRETARY**

NORTH CENTRAL REGIONAL JAIL AND PRISON
ONE LOIS LANE
GREENWOOD, WV 26415
(304) 873-1384 TELEPHONE

To:  **Inmate Brian Northcraft**
     **OID #3613795**

From: Joseph Wood
      Superintendent, NCRJ&CF

Date:  **28 October 2019**

RE:  **Grievance 2019-10-02-NCRJ**

••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••••

Your Grievance was received in my office at North Central Regional Jail administration on 18 October 2019 via US mail, and the grievance contained in the envelope was date stamped in my office 22 October 2019.

Please see the below answer for Grievance #2019-10-02-NCRJ:

A Use of Force review was conducted on the incident involving you and Officer Hale that occurred on January 11th, 2018 in the shower, whereas Officer Hale's report does describe taking you into the shower to change due to you having a cell mate. Officer Hale does describe you assaulting him by spitting on him, at which point you were exposed to Oleoresin Capsicum (OC), spray from a MK IV cannister. Officer Beaver confirms this in his report and further describes your resistance to his directives which resulted in another exposure to OC and him being required to force you to the floor to be controlled. An exposure form was completed describing your decontamination process, as well as reports written by the attending nurse which describes no injuries sustained and restraints within acceptable limits. The Use of Force was deemed to have been justified and within the Policies that were in place at the time of the incident. I have reviewed all the incident reports, concerning this incident, and find no evidence to support your allegations of misconduct by Officer Hale or any other Officer. I further reviewed KIOSK entries by you for the date range of 1 December 2017 through 31 January 2018 to determine if you had made any complaints concerning this allegation to the Superintendent and found that you filed zero (0) grievances and only had inquiries to the Superintendent concerning commissary privileges being restored, some clothing issues and a haircut.

Given the above facts, and current operational practices, Your Grievance is denied, and subsequently any relief sought within the grievance is also denied.

JW/jsw
Cc:  Assistant Commissioner Bureau of Prisons and Jails
     Chief of Institutional Operations
     Inmate file

Appeal

TO: Chief of Operations

From: Brian Northcraft 3613795

Date: November 4th, 2019

I would like to appeal the decisions by Joseph Wood on Grievance #2019-10-01-NCRJ and Grievance #2019-10-02-NCRJ. Please investigate the incidents further and process these grievances. Please return the results of your investigations to me so I will have a hard copy of them.

Brian Northcraft 3613795
Brian Northcraft
WV Northern Correctional Facility
112 NRC Drive
Moundsville, WV 26041

NORTHERN CORRECTIONAL FACILITY
112 Northern Regional Correctional Drive
Moundsville, West Virginia 26041


M E M O R A N D U M


TO:      Brian Northcraft #3613795

FROM:    Theresa Blake
         Corrections Facility Coordinator I

DATE:    21 November 2019

RE:      **LEGAL MAIL TRACKING**


        Please be advised that I am in receipt of your request for a chronological list of all your
outgoing legal mail from November 4, 2019 through November 10,2019. All outgoing legal mail
within the requested date range is listed below

Outgoing legal mail:


11-6-19    David A. Farmer
           1325 Virginia St. E
           Charleston WV 25301

11-7-19    Attorney Paul Stroebel
           405 Capitol St. Ste 102
           Charleston WV 25320

11-8-19    Chief of Operations
           1409 Greenbrier St.
           Charleston WV 25311


TB


Cc: File

Appeal

TO: David Farmer Executive Director
From: Brian Northcraft 3613795
Date: November 24, 2019

I would like to appeal the decisions by Joseph Wood on Grievance #2019-10-01-NCRJ and Grievance #2019-10-02-NCRJ. I filed an appeal to the chief of operations on November 4th, 2019 and did not recieve any results of an investigation from this office. Please investigate the incidents further and process these grievances. Please return the results of your investigations to me so I will have a hard copy of them.

Brian Northcraft 3613795
Brian Northcraft
WV Northern Correctional Facility
112 NRC Drive
Moundsville, WV 26041




**STATE OF WEST VIRGINIA**
*DEPARTMENT OF MILITARY AFFAIRS & PUBLIC SAFETY*
**DIVISION OF CORRECTIONS AND REHABILITATION**

*BETSY C. JIVIDEN*
*COMMISSIONER*

*JEFF S. SANDY, CAMS, CFE*
*CABINET SECRETARY*

OFFICE OF THE COMMISSIONER
1409 GREENBRIER STREET
CHARLESTON, WV 25311
(304) 558-2036 TELEPHONE - (304) 558-5367 FAX

TO:     Brian Northcraft #3613795

THRU:   Superintendent of NCC&J Shawn Straughn

FROM:   Central Office Grievance Review

DATE:   December 12, 2019

RE:     2019-10-01-NCRJ & 19-10-02-NCRJ

Upon review of all available documentation, including your written statement and that of Supt. Wood. The Commissioner's Office is Affirming the responses issued by Supt. Wood and Denying your grievances

It should also be noted, that as a matter of Policy, copies of investigative files or reports will not be provided directly to members of the inmate population.

RECEIVED

DEC 1 2 2019

WARDEN'S OFFICE