**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

BRIAN NORTHCRAFT,

        Plaintiff,

v.                               CIVIL ACTION NO.   2:20-cv-00100

WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion to Dismiss Count I* (Document 23), *Defendants' Memorandum of Law in Support of Motion to Dismiss Count I* (Document 24), and *Plaintiff Brian Northcraft's Memorandum in Opposition to Defendants' Motion to Dismiss* (Document 25). The Court finds that the motion should be granted in part and denied in part, as more fully set forth herein.

**FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND**

The Plaintiff originally filed his complaint in the Circuit Court of Kanawha County, West Virginia, on January 16, 2020. The matter was removed to this Court on February 3, 2020. The complaint asserts that from 2017 to 2018 the Plaintiff was incarcerated at North Central Regional Jail and Correctional Center (NCRJCC).[1] The Plaintiff asserts the following facts in support of his claims.

---

[1] In the complaint, the Plaintiff recounts an event that occurred on December 4, 2017. However, the Plaintiff acknowledges that the statute of limitations has run and asserts no claims regarding that incident. Thus, the Court will not consider the facts surrounding that event for purposes of the instant motion.

On or about January 11, 2018, Defendant Hale removed the Plaintiff from his cell and instructed him to get into the shower stall next to his cell.   Defendant Hale entered the shower stall along with the Defendant and pulled the door shut.   At that point, Defendant Hale sprayed the Plaintiff in the eyes and face with Oleoresin Capsicum (OC) for several seconds, and then yelled at the Plaintiff to get on the ground.   The Plaintiff complied and lay face down on the shower floor.   Defendant Hale forcefully handcuffed the Plaintiff at which point Defendant Beaver opened the stall door.   Defendant Hale then grabbed the handcuffs, which secured the Plaintiff's hands behind his back, and pulled the Plaintiff up off the floor causing the Plaintiff "excruciating pain in his wrists, arms, and shoulders."   (Document 1-1 at 9.)   Once the Plaintiff was on his feet, Defendant Hale kneed the Plaintiff in his left kidney multiple times.

Defendant Beaver made no attempt to intervene or arrest Defendant Hale's assault. Defendant Hale then told Defendant Beaver that the Plaintiff had spit on him.   The Plaintiff denies this allegation and asserts that he was never charged with assaulting an officer or any other rule violation which would support an allegation that he had spit on Defendant Hale.   The Plaintiff was escorted to the recreation yard, and the Defendants placed a spit mask over the Plaintiff's face. The Plaintiff's face was still saturated in OC.   He requested medical attention and that he be decontaminated from the OC.   Defendants Hale and Beaver did not contact medical or decontaminate the Plaintiff of the OC.

The Plaintiff was then moved outside, beside the transport van for transportation to a hearing at the Tyler County Courthouse.   Once outside, Defendants Hale, Beaver, and John Doe hogtied the Plaintiff by attaching zip ties from the Plaintiff's handcuffs, which were behind his back, to his shackles.   The Defendants picked the Plaintiff up and threw him into the van onto an

empty bench seat, facedown.   As a result of being thrown into the transport van, while hogtied, Plaintiff's head struck the wall of the van.

The Plaintiff was face down in the van, and "could not breathe, blinded and burning from the OC spray.   Plaintiff began crying and pleading for help."   (Document 1-1 at 9.)   While the vehicle was in motion, the Plaintiff was thrown from his seat due to the movement of the vehicle, and his face struck a steel leg of the bench seat, which chipped his teeth.   At this point the Plaintiff was still hogtied, bleeding, blinded and burning, and was now trapped between the seat and the security cage of the vehicle.   The Plaintiff, again, begged the Defendants to help him.

Instead, the Defendants told the other inmates in the vehicle not to worry about the Plaintiff because he was a sex offender.   The Defendants stopped the van, and Defendant Hale got into the back of the van and again assaulted the Plaintiff with OC spray.   The Plaintiff was then lifted back onto the seat, during which his face struck a wall of the van.   Defendant Hale stated that if the Plaintiff moved on the seat at all he would assault the Plaintiff with the OC spray again.   The "Plaintiff was still hogtied, facedown, blinded, burning and wearing the spit mask."   (Document 1-1 at 9.)

Upon arriving at the Tyler County Courthouse, the Plaintiff requested to speak to his attorney.   Defendant Hale replied, "There isn't a [lawyer] that can help you with the charges you have."   (Document 1-1 at 10.)   The Plaintiff was escorted into the courtroom, where he was present for his hearing, soaked in OC spray, with his face bleeding.   The Plaintiff's then lawyer, Kevin Neiswonger, noted the Plaintiff's condition.

After the hearing, the Plaintiff was transported back to NCRJCC with his belly chain zip tied to his shackles.   This allowed the Plaintiff to sit on the bench seat, but in a bent over position.

Throughout the trip, Defendant Hale threatened to spray the Plaintiff by brandishing his OC. Each time, the Plaintiff would cower in fear and the Defendants would laugh. Periodically, Defendant Beaver would stop the van so Defendant Hale could tighten the Plaintiff's zip ties, forcing the Plaintiff into even more of a bent over position.

Upon returning to NCRJCC, Defendant Hale conducted a strip search of the Plaintiff, during which he forced the Plaintiff to bend over and spread his buttocks approximately four times. After the conclusion of the strip search, Defendant Hale asked the Plaintiff, "How does it feel to be sexually exploited?" The Plaintiff was then returned to his cell. In total, the Plaintiff was contaminated in OC spray for approximately eight hours, hogtied for approximately two hours, and forced to wear an OC contaminated spit mask for approximately two hours.

Based on these allegations, the Plaintiff asserts five claims. Count I asserts a claim for intentional infliction of emotional distress (IIED); Count II is a claim made pursuant to 42 U.S.C. § 1983; Count III is a claim asserting vicarious liability; Count IV is a claim for reckless and/or negligent conduct in violation of public policy and procedure; and Count V is a claim for assault and battery. The Plaintiff seeks damages from the Defendants, jointly and severally, for physical injury, medical expenses, damages for emotional and mental distress, and punitive damages. The Plaintiff also seeks court costs, pre-judgment interest, post-judgment interest, attorney's fees, and expenses. The Plaintiff asserts that he has exhausted his administrative remedies.

The Defendants filed their motion to dismiss Count I of the complaint on October 12, 2020. The Plaintiff filed a response on October 20, 2020. Thus, the motion is ripe for review.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915, if the court determines that an action filed by a prisoner against a government entity, officers, or employees is frivolous or malicious, fails to state a claim on which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief, the court must dismiss the action.   28 U.S.C. § 1915(e)(2).   A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted tests the legal sufficiency of a complaint or pleading.   *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson,* 521 F.3d 298, 302 (4th Cir. 2008).   Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Additionally, allegations "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (*quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).   In other words, "a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."   *Twombly*, 550 U.S. at 555.   Moreover, "a complaint [will not] suffice if it tenders naked assertions devoid of further factual enhancements." *Iqbal,* 556 U.S. at 678 (*quoting Twombly,* 550 U.S. at 557) (internal quotation marks omitted).

The Court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).   The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor."   *Edwards v. City of Goldsboro*, 178 F.3d 231,

5

244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal,* 556 U.S. at 679. Furthermore, the court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570). In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 570). A plaintiff must, using the complaint, "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557). "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

## DISCUSSION

The Defendants move this Court to dismiss Count I of the Complaint, which asserts a claim for intentional infliction of emotional distress (IIED), as duplicative of Count V, which asserts that due to an alleged assault and battery by the Defendants the Plaintiff suffered "mental anguish, embarrassment, and humiliation." (Document 24 at 2.) The Defendants argue that since the

Plaintiff's IIED claim is duplicative of the claim for assault and battery, it must be dismissed under established precedent.

The Plaintiff argues that the claim for IIED and outrageous conduct does not arise out of the same misconduct as the claim for assault and battery. In particular, the Plaintiff asserts that the claim for assault and battery is premised on events when the Defendants sprayed the Plaintiff with OC spray on multiple occasions, beat and struck the Plaintiff, failed to properly secure the Plaintiff in the transport van causing injury, and threatened further injury on the Plaintiff during his transport. In contrast, the claim for intentional infliction of emotional distress is premised on the misconduct that occurred during the strip search when the Defendants forced the Plaintiff to spread his buttocks approximately four times and asked the Plaintiff how it felt to be sexually exploited. Additionally, the Plaintiff argues that although a Plaintiff may not recover twice for the same claim, nothing prevents duplicitous claims from proceeding past a motion to dismiss, allowing them to enter the discovery phase of litigation.

The West Virginia Supreme Court has determined that "[b]ecause an action for assault and battery allows for recovery of damages due to resulting emotional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery, where both claims arise from the same event." Syl. pt. 4, *Criss v. Criss*, 356 S.E.2d 620, 620 (W. Va. 1987). "A plaintiff may not recover damages twice for the same injury simply because he has two legal theories." *Id.* at 622 (quoting Syl. pt. 7, *Harless v. First Nat. Bank*, 289 S.E.2d 692 (1982)). In general, claims that are duplicitous should be dismissed at the motion to dismiss stage. *Pearson v. Thompson*, No. 2:19-cv-00321, 2019 WL 4145613, at *2 (S.D. W. Va. Aug. 29, 2019) (J., Johnston). However, to the extent that an intentional infliction of emotional distress claim arises out of

separate events from the plaintiff's assault and battery claims, a plaintiff may proceed with both claims.  *Settle v. Hall*, No. Civ.A. 2:11-00307, 2012 WL 1831845, at *2 (S.D. W. Va. May 18, 2012) (J., Copenhaver).

To the extent the Plaintiff has alleged that the events related to the assault and battery by the Defendants support the claim for intentional infliction of emotional distress (See Complaint paragraph 22), the intentional infliction of emotional distress claim is barred as duplicitous. However, both claims may proceed to the extent that the Plaintiff parses the events, as asserted in the Plaintiff's response, such that the intentional infliction of emotional distress claim is in regard to the strip search, and the assault and battery claim is in regard to conduct alleged when the Defendants sprayed the Plaintiff with OC on multiple occasions, beat and struck the Plaintiff, failed to properly secure the Plaintiff in the transport van causing injury, and threatened further injury on the Plaintiff during his transport.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion to Dismiss Count I* (Document 23) be **GRANTED IN PART** and **DENIED IN PART**, as more fully set out herein.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:    October 30, 2020

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

8