IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRIAN NORTHCRAFT,

          Plaintiff,

v.                                                                CIVIL ACTION NO. 2:20-cv-00100

WEST VIRGINIA DIVISION OF CORRECTIONS
AND REHABILITATION, et al.,

          Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 44), and *Memorandum of Law in Support of Motion for Summary Judgment* (Document 45), *Plaintiff's Memorandum in Opposition to West Virginia Division of Corrections and Rehabilitation's Motion for Summary Judgment* (Document 46), *Defendants' Reply Memorandum of Law in Support of Motion for Summary Judgment* (Document 47), and all attendant documentation. For the reasons stated herein, the Court finds that the motion should be granted in part and denied in part.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff originally filed his complaint in the Circuit Court of Kanawha County, West Virginia, on January 16, 2020. The matter was removed to this Court on February 3, 2020. The complaint asserts that from 2017 to 2018, the Plaintiff was incarcerated at North Central Regional Jail and Correctional Center (NCRJCC). The Plaintiff asserts the following facts in support of his claims.

On or about January 11, 2018, Defendant Hale removed the Plaintiff from his cell and instructed him to get into the shower stall next to his cell. Defendant Hale entered the shower

stall along with the Defendant and pulled the door shut. At that point, Defendant Hale sprayed the Plaintiff in the eyes and face with Oleoresin Capsicum (OC) for several seconds and yelled at the Plaintiff to get on the ground. The Plaintiff complied and lay face down on the shower floor. Defendant Hale forcefully handcuffed the Plaintiff at which point Defendant Beaver opened the stall door. Defendant Hale then grabbed the handcuffs, which secured the Plaintiff's hands behind his back, and pulled the Plaintiff up off the floor causing the Plaintiff "excruciating pain in his wrists, arms, and shoulders." (Document 1-1 at 9.) Once the Plaintiff was on his feet, Defendant Hale kneed the Plaintiff in his left kidney multiple times.

Defendant Beaver made no attempt to intervene or arrest Defendant Hale's assault. Defendant Hale told Defendant Beaver that the Plaintiff had spit on him. The Plaintiff denies this allegation and asserts that he was never charged with assaulting an officer or any other rule violation which would support an allegation that he had spit on Defendant Hale. The Plaintiff was escorted to the recreation yard, and the Defendants placed a spit mask over the Plaintiff's face. The Plaintiff's face was still saturated in OC. He requested medical attention and that he be decontaminated from the OC. Defendants Hale and Beaver did not contact medical or decontaminate the Plaintiff.

The Plaintiff was then moved outside, beside the transport van for transportation to a hearing at the Tyler County Courthouse. Once outside, Defendants Hale, Beaver, and John Doe hogtied the Plaintiff by attaching zip ties from the Plaintiff's handcuffs, which were behind his back, to his shackles. The Defendants picked the Plaintiff up and threw him into the van onto an empty bench seat, facedown. As a result of being thrown into the transport van, while hogtied, Plaintiff's head struck the wall of the van.

The Plaintiff was face down in the van, and "could not breathe, blinded and burning from the OC spray. Plaintiff began crying and pleading for help." (Document 1-1 at 9.) While the vehicle was in motion, the Plaintiff was thrown from his seat due to the movement of the vehicle, and his face struck a steel leg of the bench seat, which chipped his teeth. At this point, the Plaintiff was still hogtied, bleeding, blinded and burning, and was trapped between the seat and the security cage of the vehicle. The Plaintiff, again, begged the Defendants to help him.

Instead, the Defendants told the other inmates in the vehicle not to worry about the Plaintiff because he was a sex offender. The Defendants stopped the van, and Defendant Hale got into the back of the van and again assaulted the Plaintiff with OC spray. As the Plaintiff was lifted back onto the seat, his face struck a wall of the van. Defendant Hale stated that if the Plaintiff moved on the seat at all he would assault the Plaintiff with the OC spray again. The "Plaintiff was still hogtied, facedown, blinded, burning and wearing the spit mask." (Document 1-1 at 9.)

Upon arriving at the Tyler County Courthouse, the Plaintiff requested to speak to his attorney. Defendant Hale replied, "There isn't a [lawyer] that can help you with the charges you have." (Document 1-1 at 10.) The Plaintiff was escorted into the courtroom, where he was present for his hearing, soaked in OC spray, with his face bleeding. The Plaintiff's then lawyer, Kevin Neiswonger, noted the Plaintiff's condition.

After the hearing, the Plaintiff was transported back to NCRJCC with his belly chain zip tied to his shackles. This allowed the Plaintiff to sit on the bench seat, but in a bent over position. Throughout the trip, Defendant Hale threatened to spray the Plaintiff by brandishing his OC. Each time, the Plaintiff would cower in fear and the Defendants would laugh. Periodically,

Defendant Beaver would stop the van so Defendant Hale could tighten the Plaintiff's zip ties, forcing the Plaintiff into even more of a bent over position.

Upon returning to NCRJCC, Defendant Hale conducted a strip search of the Plaintiff, during which he forced the Plaintiff to bend over and spread his buttocks approximately four times. After the conclusion of the strip search, Defendant Hale asked the Plaintiff, "How does it feel to be sexually exploited?" The Plaintiff was returned to his cell. In total, the Plaintiff was contaminated in OC spray for approximately eight hours, hogtied for approximately two hours, and forced to wear an OC contaminated spit mask for approximately two hours.

Based on these allegations, the Plaintiff asserts five claims. Count I asserts a claim for intentional infliction of emotional distress, Count II is made pursuant to 42 U.S.C. § 1983, Count III asserts vicarious liability, Count IV alleges reckless and/or negligent conduct in violation of public policy and procedure, and Count V is a claim for assault and battery. The Plaintiff seeks damages from the Defendants, jointly and severally, for physical injury, medical expenses, damages for emotional and mental distress, and punitive damages. The Plaintiff also seeks court costs, pre-judgment interest, post-judgment interest, attorney's fees, and expenses. The Plaintiff states that he has exhausted his administrative remedies.

The Defendants contest the Plaintiff's version of the facts and instead assert the following: On January 11, 2018, the Plaintiff was removed from his cell by Officers Hale and Beaver to prepare for transport to the Tyler County Courthouse for a hearing. The Plaintiff was required to wear a red uniform because he had recently attempted escape but was not wearing the proper uniform when Officers arrived. The Plaintiff was asked to step into a shower stall beside his cell

to change so his cellmate would not be disturbed. Officer Hale followed the Plaintiff into the shower stall to supervise.

As Officer Hale approached, the Plaintiff spit into his face. In response, Officer Hale deployed OC spray toward the Plaintiff. Officer Hale exited the shower to clean his face. Officer Beaver, who was standing directly outside the shower stall, heard Officer Hale yell that the Plaintiff had spit in his face, and then heard the sound of OC spray being deployed. Officer Beaver gave repeated commands for the Plaintiff to get on the ground so that wrist restraints could be used. The Plaintiff did not comply, so he was taken to the ground. Because the Plaintiff continued to fight and pushed his hands under his chest, Officer Beaver sprayed the Plaintiff with OC spray again, causing him to relent and allow Officer Beaver to handcuff him.

At that point, Officers Hale and Beaver escorted the Plaintiff to an outside recreation yard to be decontaminated. After the Plaintiff had a chance to breathe fresh air, the officers sprayed his face with water and wiped off the OC residue. Within twelve minutes of the OC spray being used, the Plaintiff was taken to medical staff to be examined. The medical staff determined that the Plaintiff did not require further medical treatment or decontamination, so he was changed into his red uniform for transport. Based on the policy for all inmate transports, the Plaintiff was handcuffed in front and placed in ankle shackles. The length of the ankle shackles was reduced using a flex cuff, based on the Plaintiff's status as an escape risk.

The Defendants, Officers Hale and Beaver, deny that the transport van was stopped and that OC was deployed in the van. The Defendants further state, "[n]one of Plaintiff's claims that force was used toward him during the transport are supported by evidence other than Plaintiff's self-serving testimony." (Document 45 at 4.) Officer Hale further denies making any improper

5

statement during the strip search upon the Plaintiff's return to the facility. Officer Hale alleges that the strip search, which included a check for potential contraband inside the inmate's anus, was proper, not excessive, and was identical to searches conducted every day at the facility.

On April 26, 2021, the Defendants filed a motion for summary judgment. The Plaintiff filed a response on May 10, 2021, and the Defendants filed a reply on May 17, 2021. The motion is ripe for consideration.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light

most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The Defendants argue that summary judgment should be granted in their favor on all claims, except for the claims against Defendants Hale and Beaver for excessive force pursuant to 42 U.S.C. § 1983 and for assault and battery. The Defendants assert that the claims against the West Virginia Division of Corrections and Rehabilitation (WVDCR) do not identify any clearly

7

established laws which were violated and are instead claims for vicarious liability against the WVDCR based on the conduct of Officers Hale and Beaver. The Defendants argue that summary judgment is appropriate because: (1) the Defendants have a right to qualified immunity; (2) the Plaintiff has failed to demonstrate a prima facie cause of action against the Defendants for intentional infliction of emotional distress; and (3) the Plaintiff's claim that the WVDCR is vicariously liable is without merit. The Defendants further assert that the Plaintiff does not oppose dismissal of Tim Bowen, former Superintendent of the North Central Regional Jail, with prejudice, as he has not been served and Plaintiff's counsel acknowledged during Plaintiff's deposition that a claim against Defendant Bowen would not proceed to trial.

   *A. Qualified Immunity*

The Defendants argue that the WVDCR is entitled to qualified immunity for Counts III and IV, which assert claims of vicarious liability and negligence against the WVDCR premised on claims that Officers Hale and Beaver used excessive force, and Count V, which seeks damages for assault and battery. In support, the Defendants assert that the WVDCR is entitled to qualified immunity from all negligence claims asserted against it and it cannot be held vicariously liable for the intentional acts of Officers Hale and Beaver. The Defendants argue that the Plaintiff has failed to identify any precedent that would establish a legal principle which the WVDCR violated in its hiring, training, supervision, and/or retention of Officers Hale and/or Beaver, related to the use of force. The Defendants further state, "In fact, Plaintiff has developed no evidence to support a finding of even negligence in the hiring, training, supervision, and/or retention of Officers Hale and Beaver, separate and apart from the fact that no clearly established law was violated."

(Document 45 at 8.) The Defendants further argue that negligence is not a sufficient allegation to demonstrate violation of a clearly established law.

As an initial matter, the Plaintiff has asserted a claim against the Defendant WVDCR for reckless/negligent conduct and violation of policy and procedure. The complaint states,

> Defendant WVDCR has policies and procedures in place that preclude the use of excessive force by Correctional officers and transport officers. . . Defendant WVDCR's reckless/negligent conduct was a violation of policy and procedure that resulted in Plaintiff being subjected to excessive force as described herein. The violation of this well-known policy was a proximate cause of Plaintiff's injuries.

(Compl. at ¶ 35, 37.) The Court interprets this claim as attempting to set forth a claim for negligent hiring or supervision against Defendant WVDCR. However, no facts have been alleged to support that claim, the Plaintiff has not identified the specific policies and procedures which were purportedly violated, and the Plaintiff set forth no argument or evidence in its response to support the claim. The Plaintiff has failed to offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Therefore, the Court finds that the motion for summary judgment should be granted as to the claim for negligent/reckless conduct and violation of policy and procedure.

To determine whether a state or its agencies are entitled to qualified immunity, the West Virginia Supreme Court has established a two-part test. First, for discretionary government functions, "a reviewing court must determine whether the plaintiff has demonstrated that such acts or omissions are in violation of clearly established statutory or constitutional rights or laws of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive." Syl. pt. 11, *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 766 S.E.2d 751, 756

(W. Va. 2014). A state, its agencies, and its officials are entitled to immunity from liability in the absence of such a showing. *Id.*

If, however, the plaintiff identifies a clearly established right which has been violated by the acts or omissions of the state, its agencies, or its officials or employees, then "the court must determine whether such acts or omissions were within the scope of the public official or employee's duties, authority, and/or employment." *Id.* at Syl. pt. 12. If the court determines that the employee was acting within the scope of his employment or duties, then the state and its agencies may be held vicariously liable for such acts or omissions. *Id.*

Accordingly, the Court must first determine whether Defendant Hale and/or Defendant Beaver's actions constitute a violation of a clearly established statutory or constitutional right, law of which a reasonable person would have known or are otherwise fraudulent, malicious, or oppressive. The Supreme Court of West Virginia has previously determined that the unprovoked or malicious use of OC spray against inmates is a violation of clearly established rights under the Eighth Amendment. *Ballard v. Delgado*, 826 S.E.2d 620, (W. Va. 2019) (citing *Iko v. Shreve*, 535 F.3d 225, 235 (4th Cir. 2008) ("It is generally recognized that it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain."); *Greene v. Feaster*, 733 F.App'x 80, 82 (4th Cir. 2018) ("It has long been established that prison officials violate the Eighth Amendment by using 'mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'")). Accepting the Plaintiff's testimony for purpose of the motion for summary judgment, the Court finds that he has presented sufficient evidence to permit

a reasonable juror to find that Defendants Hale and Beaver violated a clearly established right by spraying him with OC spray unnecessarily.

Next, the Court must determine whether the Plaintiff has presented sufficient evidence that Defendants Hale and Beaver were acting within the scope of their duties, authority, and/or employment. Whether an act falls within the scope of employment generally presents a question of fact. *W. Va. Reg'l Jail*, 766 S.E.2d at 768. However, whether an act falls within the scope of employment may become a question of law where "the facts are undisputed and no conflicting inferences are possible." *Id.* at 768 (quoting *Mary M. v. City of Los Angeles*, 814 P.2d 1341, 1347 (Cal. 1991)). The West Virginia Supreme Court has outlined several factors to consider for purpose of determining whether an act is within the scope of employment including, whether "the conduct 1) is of the kind [the employee] is employed to perform; 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a purpose to serve the master, and 4) if force is used, the use of force is not unexpectable by the master." *Id.* at 769 (quoting Restatement (Second) of Agency § 228 (1958)) (italics omitted). "Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." *Id.* (italics omitted).

In this case, the facts surrounding the use of OC spray on the Plaintiff and the shackling of the Plaintiff are contested. The Defendants assert that the use of OC spray was provoked, and that the Plaintiff resisted as Officers Hale and Beaver attempted to restrain him. The Defendants further assert that they promptly decontaminated the Plaintiff, which is disputed by the Plaintiff. Additionally, the Defendants contest the Plaintiff's allegation that they deployed OC spray against the Plaintiff while transporting him in the van.

Viewing all facts in favor of the nonmoving party, a jury could reasonably find that the conduct in question was within the scope of employment. The Defendants' acts were carried out while they were working as transport officers for the facility, and the Defendants stated that use of OC spray is a common part of their job. The force used was in furtherance of transporting the Plaintiff, which Defendants Hale and Beaver were specifically tasked with as transport officers. "[A]n employer may be liable for the conduct of an employee, even if the specific conduct is unauthorized or contrary to express orders, so long as the employee is acting within the general scope of his authority and for the benefit of the employer." *Travis v. Alcon Laboratories, Inc.*, 504 S.E.2d 419, 431 (W. Va. 1998). Since the conduct appears motivated, at least in part, by a purpose to serve the master, this case is unlike other cases that have found tortious conduct not to be within the scope of employment. *See W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492 (W. Va. 2014) (finding that sexual assault of an inmate was not within scope of employment).

Thus, the Defendants are not entitled to qualified immunity as a matter of law. The Defendants' motion is denied with respect to Counts III and V, and granted with respect to Count IV for reckless/negligent conduct and violation of policy and procedure, as noted above.

B. *Liability Under 42 U.S.C. § 1983*

The WVDCR argues that it is entitled to dismissal of the claim brought pursuant to 42 U.S.C. § 1983, given that, as a state agency, it is not a person subject to suit under that statute. Generally, a state and its agencies are not "persons" subject to suit under 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Moreover, there is no *respondeat superior* liability for state agencies based on claims against its officers under 42 U.S.C. § 1983.

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978). As a state agency and given the allegations in the complaint, Defendant WVDCR it is not subject to suit under 42 U.S.C. § 1983. Therefore, Count II should be dismissed against the Defendant WVDCR.

### C. *Intentional Infliction of Emotional Distress*

The Defendants argue that the Plaintiff has failed to prove a *prima facie* case for intentional infliction of emotional distress. The Defendants argue the intentional infliction of emotional distress claim should be dismissed against the WVDCR because it is entitled to qualified immunity since such actions were outside the scope of employment. The Defendants further argue this claim should be dismissed against Defendant Beaver because he was not involved, and no evidence has been produced to show that he had prior knowledge of any improper conduct by Defendant Hale.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

*Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 425 (W. Va. 1998).

The West Virginia Supreme Court has determined in order to demonstrate "outrageousness" a Plaintiff must show that "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Tanner v. Rite Aid of W. Va., Inc.*, 461 S.E. 2d 149, 157 (W. Va. 1995) (quoting Restatement (Second) of Torts § 46(1) (1965)).

In outlining cases that have deemed conduct outrageous, the West Virginia Supreme Court has stated,

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. . . . The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam.

*Alcon Labs*, 504 S.E.2d at 425-26 (quoting Restatement of Torts (Second), § 46). "Whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination." *Id.* at Syl. pt. 4. An employer may be held liable for the intentional infliction of emotional distress upon an individual if the employee was acting within the scope of his employment. *Alcon Labs*, 504 S.E.2d at Syl. pt. 5-6.

Through the Memorandum Opinion and Order entered October 30, 2020, the Court limited the claim for intentional infliction of emotional distress to the circumstances surrounding the strip search of the Plaintiff. The facts surrounding the strip search are contested. The Plaintiff asserts that Defendant Hale forced the Plaintiff to bend over and spread his buttocks approximately four times during a strip search. After the conclusion of the strip search, Defendant Hale asked the Plaintiff, "How does it feel to be sexually exploited?" Defendant Hale denies these allegations.

Viewing the facts in favor of the Plaintiff, the strip search may reasonably be considered

14

outrageous. The conduct alleged by the Plaintiff related to the strip search went beyond all bounds of decency and was likely to provoke emotional distress. The Plaintiff asserts that the events did, in fact, cause emotional distress. Additionally, it is not clear that these actions were outside the scope of Defendant Hale's employment. The actions occurred during a search procedure that Defendant Hale was carrying out for his employer. Therefore, the motion for summary judgment should be denied as to Count I for Defendants Hale and WVDCR. However, there has been no evidence submitted that Defendant Beaver was aware of or participated in the strip search. Count I should be dismissed against Defendant Beaver.

*D. Dismissal of "John Doe" Claims for Failure to Prosecute*

The Defendants assert that Tim Bowen and the "John Doe" Correctional Officers should be dismissed as Defendants from this suit because Defendant Tim Bowen has not yet been served and the Plaintiff admitted that claims against Defendant Bowen would not proceed to trial. The Defendants further argue that "John Doe" Defendants have not been identified and discovery has closed in this case, so they should likewise be dismissed. The Plaintiff put forth no argument challenging the dismissal of these Defendants in his response.

Pursuant to the Federal Rules of Civil Procedure, a defendant must be served within 120 days of the complaint being filed. The complaint in this matter was filed on January 16, 2020. Neither Defendant John Doe nor Defendant Tim Bowen were served within that timeframe and the Plaintiff filed no request to extend the time within which to serve those Defendants. Moreover, discovery in this matter has closed. Therefore, Defendants Tim Bowen and "John Doe" should be dismissed.

## CONCLUSION

WHEREFORE, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion for Summary Judgment* (Document 44) be **GRANTED IN PART AND DENIED IN PART**, as more fully set forth herein. Specifically, the motion for summary judgment is **GRANTED** as to Count IV, **GRANTED** as to Count I for Defendant Beaver and **GRANTED** as to Count II for Defendant WVDCR, **GRANTED** as to Defendants Tim Bowen and "John Doe", **DENIED** as to Counts III and V for Defendant WVDCR, and **DENIED** as to Count I for Defendants Hale and WVDCR. No motion is made, or addressed by the Court, regarding Defendants Hale and Beaver with respect to Count II or Count V.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 9, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA